UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

----------------------------------------------------------------
                                    )
  United States of America,   ) File No. 22-cr-224(7)
                                    )                   (NEB/DTS)
          Plaintiff,          )
                                    )
  v.                          )
                                    )
                                    ) Courtroom 13W
  Abdul Abubakar Ali(7),      ) Minneapolis, Minnesota
                                    ) Wednesday, October 26, 2022
          Defendant.          ) 4:00 p.m.
                                    )
----------------------------------------------------------------

BEFORE THE HONORABLE NANCY E. BRASEL
UNITED STATES DISTRICT COURT DISTRICT JUDGE

**CHANGE OF PLEA HEARING**

<u>APPEARANCES:</u>

  For Plaintiff:          UNITED STATES ATTORNEY'S OFFICE
                          BY:  HARRY JACOBS
                          600 United States Courthouse
                          300 South Fourth Street
                          Minneapolis, Minnesota 55415

  For Defendant:          MESHBESHER & ASSOCIATES P.A.
                          BY:  KEVIN M. GREGORIUS
                               CECELIA M. BURKE
                          9800 Shelard Parkway, #310
                          Minneapolis, Minnesota 55441

  Court Reporter:         RENEE A. ROGGE, RMR-CRR
                          United States Courthouse
                          300 South Fourth Street, Box 1005
                          Minneapolis, Minnesota 55415

     Proceedings recorded by mechanical stenography;
  Transcript produced by computer.

                          *   *   *

**P R O C E E D I N G S**

**IN OPEN COURT**

THE COURT:  Good afternoon.  We are on the record. The case number is 22-cr-224.  United States versus Abdul Abubakar Ali.

May I please have appearances beginning with the government.

MR. JACOBS:  Harry Jacobs on behalf of the United States.  Good afternoon, Your Honor.

THE COURT:  Good afternoon.

And from the defense.

MR. GREGORIUS:  Kevin Gregorius, Your Honor, on behalf of Mr. Ali.  I should note also present at counsel table is my associate Cecelia Burke.

THE COURT:  Good afternoon to all of you.

We are here today on this indictment because it is my understanding that, Mr. Ali, in this case you have determined to enter a guilty plea today.  Is that correct?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  All right.  And let's just make sure that microphone is on and pulled toward you, because I'm going to have a number of questions for you.

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  All right.  And so just because you have told me that does not mean that at the end of the

hearing, when I ask you for your plea, that you need to plead guilty. It is absolutely up to you what you wish to do. And up until the time that you enter your plea, you can change your mind. And I want you to know that and keep that in mind.

Also, I'd like you to keep in mind that you are here with Mr. Gregorius. You are here with able counsel. And if at any time you wish to stop and talk with counsel about whether you should plead or about a question that I ask, I want you to do that. I don't mind waiting while you get your answers because, again, at the end of the hearing, if I ask for your plea and you enter a plea of guilty and I accept that plea, you are not going to be able to withdraw it except under very limited circumstances.

Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right. And because I have to make sure that your plea is knowing, voluntary and informed, I need to ask you a number of questions, and so I'm going to place you under oath to do that.

Would you raise your right hand. Do you affirm under penalty of perjury that the testimony you are about to give is the truth, the whole truth and nothing but the truth?

THE DEFENDANT: I do, Your Honor.

THE COURT:  All right.  You can put your hand down.  Thank you.

Can you state and spell your first, middle and last name for me, please.

THE DEFENDANT:  First is Abdul.  A-B-D-U-L.  Middle is Abubakar.  A-B-U-B-A-K-A-R.  Last name is Ali.  A-L-I.

THE COURT:  And you understand now that you are under oath?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  So I'm required to tell you that because you are under oath, if you say anything that's false at today's hearing, the government could prosecute you for a separate crime and that is false statement -- do you understand that -- or perjury?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Okay.  If there's anything that I say today that you don't hear, that you don't understand, that you want me to make clearer, go ahead and ask me or take a break and talk to your attorney.  Again, I want to make sure that you get all of your answers to your questions before you plead.

How old are you, sir?

THE DEFENDANT:  I'm 40 years old.

THE COURT:  And how far did you go in school?

THE DEFENDANT:  I have master's degree.

THE COURT:  And what's your master's degree in?

THE DEFENDANT:  Electrical engineering.

THE COURT:  Where's that from?

THE DEFENDANT:  Indiana University, Purdue University in Indianapolis.

THE COURT:  And are you a United States citizen?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you have any trouble speaking or understanding the English language?

THE DEFENDANT:  No, Your Honor.

THE COURT:  And you can read English pretty well?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  With an electrical engineering degree. All right.

Are you now under the influence of alcohol?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Have you consumed any alcohol in the last 24 hours?

THE DEFENDANT:  No, Your Honor.

THE COURT:  And how about any drugs or medication?

THE DEFENDANT:  No, Your Honor.

THE COURT:  And any of that within the last 24 hours?

THE DEFENDANT:  No, Your Honor.

THE COURT: Okay. Are you generally in good health?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you suffer from any physical pain?

THE DEFENDANT: No, Your Honor.

THE COURT: And are you able to think clearly here today?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Have you ever received a mental health diagnosis?

THE DEFENDANT: No, Your Honor.

THE COURT: And I ask that only to make sure that you are indeed thinking clearly here today.

You are represented here today by Mr. Gregorius, who has been in this courtroom many times before. Have you fully discussed the charges with him?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And have you told him everything that you want him to know about this case?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And are you fully satisfied with the legal services that he has provided to you?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Mr. Gregorius, have you had sufficient time to investigate the law and the facts of Mr. Ali's case?

MR. GREGORIUS:  I have, Your Honor.

THE COURT:  And are you satisfied that he understands the charges against him and the consequences of pleading guilty?

MR. GREGORIUS:  I am satisfied with that, Your Honor.

THE COURT:  And do you personally believe that he is competent to enter a guilty plea today?

MR. GREGORIUS:  I do.

THE COURT:  Okay.  Mr. Ali, the law requires me to describe the nature of the charges against you.  I'm going to do that now.

You've been charged with at least Count 1 of the indictment, which is -- my understanding of what you're pleading to -- is conspiracy to commit wire fraud, in violation of 18 U.S.C. Section 371.  So that's the conspiracy charge in Count 1.

Do you understand that this is the charge against you?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And there are, of course, remaining charges that would have been read or not at the indictment.

Do you wish me to read any of those, Mr. Gregorius?

MR. GREGORIUS:  That's unnecessary, Your Honor.

Thank you.

THE COURT:  All right.  Mr. Ali, you've told me that you wish to enter a guilty plea today.  If you enter that plea, you are going to be giving up a number of important constitutional rights.  So I want to go through those.  Those include a right to a jury trial.  I will go through those in detail to make sure that you understand the rights that you are giving up.

The first right is actually one that you don't give up, and that's your right to an attorney.

So you know, you have the right to an attorney at every stage of the proceeding, and that's before trial, during trial and after trial.  And you can either hire an attorney or, if you can't afford an attorney, one will be appointed to represent you without charge.

Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  You also have the right to file pretrial motions seeking information from the government or seeking to argue that the government violated your constitutional rights, for example, when they searched your property or obtained evidence against you.  You would be giving up the right to go forward and contest the evidence by filing motions.

Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And, of course, you do have a right to a trial.  So at trial a jury of twelve citizens of this district would sit and determine whether the government proved their case against you beyond a reasonable doubt.

You have the right to a speedy trial.  So that would happen within months -- or weeks, rather than months or years.  So there's a statute that governs that.

And at trial you are presumed innocent, just as you are here today.  So I would instruct the jurors that they must presume that you are innocent.  And the burden is always on the government to prove their case against you beyond a reasonable doubt.

Do you understand all of that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And if you did go to trial, the government seeks to prove their case against you by calling witnesses.  And your right is to sit in court, to hear those witnesses, to confront them, to have your attorney cross-examine them to expose weaknesses in their testimony.  You have the right to do all of that.  It's guaranteed by the Constitution.

Do you understand that you are giving up that right?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And at trial you have the right to remain silent, just as you do here today.  No one can force you to take the stand and testify.  If you chose not to testify, your silence can't being used against you.  And if you wanted me to, I would instruct the jury that they can't use your silence against you in determining whether the government had proven its case.

And on the flip side, although you don't have to do any of that, you don't have to call witnesses, you don't have to present any evidence and you can remain silent, you have the right to take the stand.  You have the right to call witnesses.  You have the right to ask me for an order to bring witnesses into court, for example.

Do you understand all of that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Okay.  If you testified or called witnesses or presented any evidence at your trial, that burden doesn't shift.  It's always on the government to prove your guilt beyond a reasonable doubt.  They must do so to all twelve of those jurors.  And the jurors must be unanimous in their verdict.

Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Okay.  Let me just address appeal.

If you went to trial and you were convicted, you

could appeal that to the higher court, the Eighth Circuit. If you plead guilty and I accept your plea, you won't be able to appeal the conviction to that higher court.

Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Okay.  All of those rights that are guaranteed to you under the Constitution, except for that right to an attorney, those are ones you are going to be giving up if you plead guilty.

Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And do you wish to go forward?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Okay.  The law also requires me to go through with you the maximum possible penalties of the charge that you are pleading to.

And so if you plead guilty to Count 1, which is, again, the conspiracy count, the maximum is five years in prison.  So different if you pled to the wire fraud count, but -- that would be 20.

Am I right, Mr. Jacobs?

MR. JACOBS:  That's correct, Your Honor.

THE COURT:  Yeah, if you pled to wire fraud, the max would be 20.  If you plead to conspiracy, the max is five; and that's what I'm understanding that you would plead

to.

It also carries a supervised release term of at least three years, a fine of up to $250,000 or twice the gross gain or loss caused by the offense, whichever is greatest, and a special assessment of $100.

Also, if you plead guilty to these offenses, there is a Mandatory Victim Restitution Act. I'm required to order you to pay restitution.

And I will order you to forfeit the property that's described in the forfeiture section of the indictment and in paragraph -- I think it's 14 of this plea agreement.

And, finally, I could order you to pay the costs of prosecuting you.

Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And because you are a United States citizen and you've been charged with a felony, although it doesn't have anything to do with this court, if you plead guilty, one of the collateral consequences is to lose your right potentially to vote, hold public office, serve on a jury and possess any kind of gun or firearm.

Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: I want to say a couple words about supervised release. I mentioned that as a possible penalty

in this case.

If you go to prison and serve time, I can order you to be placed afterwards on supervised release, where you are released from prison and you are under certain conditions.  I decide what those conditions are.  I decide how long you should be on supervised release.

And if you violate those conditions, I can send you back to prison for that same amount of time that you are on supervised release, and you don't sort of get a break for the amount of good time that you have on supervised release.

Does that make sense?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Okay.  And I know that's a long way away, but I do want to warn you about it.

I've mentioned the plea agreement.  I have the plea agreement here in front of me, and I have the signed version.

Is this different from the last version that was sent via email to chambers, Mr. Jacobs?

MR. JACOBS:  It's the same version, Your Honor.

THE COURT:  It's the same version, but now it's been signed.  All right.

Mr. Ali, have you read the plea agreement?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Has your attorney gone through it with

you carefully?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you think you understand all of its terms?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Okay.  What I'd like to do is to have Mr. Jacobs go through the terms of the plea agreement that we haven't addressed.  There's a number of things in there that have to do with the rights that we've already gone through.

I'll have him save the factual basis for last.  The factual basis is simply what you did to commit the crime, if you indeed are guilty of it.

And I'm asking Mr. Jacobs to do that because the plea agreement, as I'll emphasize a few times here, is between you and the government.  It's not -- I'm not a party to it.  And at the end of the day when you have all -- you have come together to try to make an agreement, I'm not required to follow that agreement.  And I say that in every case.

Do you understand?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Mr. Jacobs, I'll turn it over to you, sir.

MR. JACOBS:  Thank you, Your Honor.

Mr. Ali, like the judge just mentioned, I'm going to ask you some questions about the plea agreement. Okay?

THE DEFENDANT: Okay.

MR. JACOBS: If you don't understand anything that I say or you want me to repeat or rephrase anything, just let me know and I will do that. Okay?

THE DEFENDANT: (Moves head up and down.)

MR. JACOBS: So I'm looking now at paragraph 1 of the plea agreement on the first page that deals with Charges.

You understand that pursuant to this plea agreement you are pleading guilty to Count 1 of the indictment, which charges you with conspiracy to commit mail fraud -- or excuse me -- wire fraud, in violation of 18 U.S.C. 371?

THE DEFENDANT: Yes.

MR. JACOBS: And you understand that at the time of sentencing the government has agreed to move to dismiss the remaining counts of the indictment against you?

THE DEFENDANT: Yes.

MR. JACOBS: I'm going to skip over now to page 5 of the plea agreement and paragraph 7 that goes over the Guidelines Calculations.

You've had a chance to talk to your attorney about the guideline calculations and how they apply in this case?

THE DEFENDANT:  Yes.

MR. JACOBS:  And you understand that you will be sentenced in accordance with 18 U.S.C. 3551?

THE DEFENDANT:  Yes.

MR. JACOBS:  I want to go over the guidelines as agreed to by the parties in this plea agreement.  Okay?

THE DEFENDANT:  Okay.

MR. JACOBS:  You understand that the base offense level in this case is 6?

THE DEFENDANT:  Yes.

MR. JACOBS:  You understand that certain specific characteristics apply, including that there's a 16-level enhancement because the loss amount exceeded 1.5 million, but was less than 3.5 million?

THE DEFENDANT:  Yes.

MR. JACOBS:  And you understand that the parties have agreed that a 2-level enhancement applies because the offense involved a misrepresentation that you were acting on behalf of a charitable organization?

THE DEFENDANT:  Yes.

MR. JACOBS:  I'm moving on to subparagraph (c) that outlines the Chapter 3 adjustments.

You understand that pursuant to this plea agreement the parties have agreed that because you are a minor participant in the criminal activity a 2-level

reduction will apply?

THE DEFENDANT:  Yes.

MR. JACOBS:  You understand that pursuant to this plea agreement the government has agreed to a 2-level reduction -- to make a motion for a 2-level reduction for acceptance of responsibility?

THE DEFENDANT:  Yes.

MR. JACOBS:  And you understand that the government is also agreeing to recommend that you receive an additional 1-level reduction for acceptance of responsibility contingent on certain things happening?

THE DEFENDANT:  Yes.

MR. JACOBS:  And that includes that you testify truthfully today and at a sentencing hearing, that you provide full information to the probation office, and that you engage in no conduct that is inconsistent with acceptance of responsibility?

THE DEFENDANT:  Yes.

MR. JACOBS:  Moving on to the criminal history category, you understand that the parties, that is, you and the government, believe that you will fall into criminal history category I?

THE DEFENDANT:  Yes.

MR. JACOBS:  You understand that that is not a stipulation or an agreement between the parties, but just

the best guess of the parties based on information that we currently have?

THE DEFENDANT:  Yes.

MR. JACOBS:  Moving on to subparagraph (f), the guideline range.

Based on what we just talked about, if the adjusted offense level in this case is 19 and the criminal history category is I, you understand that the sentencing guideline range is 30 to 37 months imprisonment?

THE DEFENDANT:  Yes.

MR. JACOBS:  And, similarly, the fine range is 10,000 to $100,000?

THE DEFENDANT:  Yes.

MR. JACOBS:  I want to now move on to paragraph 9, which outlines Discretion of the Court.

And the judge made mention of this a little while ago, but you understand that these stipulations in this plea agreement are binding between the parties, that is, you and the government, but does not bind the court?

THE DEFENDANT:  Yes.

MR. JACOBS:  And you understand that the sentencing guidelines that we just talked about are advisory and their application falls solely within the discretion of the court?

THE DEFENDANT:  Yes.

MR. JACOBS:  And in addition, although we've agreed to our view of the guidelines, you understand that the court will make its own determination as to how the guidelines apply?

THE DEFENDANT:  Yes.

MR. JACOBS:  And the court need not stick to those guidelines, but can actually depart from that guideline range?

THE DEFENDANT:  Yes.

MR. JACOBS:  And moving on to paragraph 10, Agreements As to Sentencing Recommendation, you understand that pursuant to this plea agreement the parties are free to recommend whatever sentence that they deem appropriate?

THE DEFENDANT:  Yes.

MR. JACOBS:  And it could be above the guidelines or below the guidelines?

THE DEFENDANT:  Yes.

MR. JACOBS:  You understand that if the court does not accept the sentencing recommendation of the parties, that you will not have the right to withdraw your guilty plea?

THE DEFENDANT:  Yes.

MR. JACOBS:  Moving on to the next page, paragraph 12, as to restitution, you understand that the Mandatory Victim Restitution Act will apply here and the

court is ordered -- will be ordered to -- required to order you to make restitution?

THE DEFENDANT:  Yes.

MR. JACOBS:  And you understand that pursuant to this plea agreement you've agreed that you owe restitution in the amount of $122,698?

THE DEFENDANT:  Yes.

MR. JACOBS:  Moving on to paragraph 13, Disclosure of Assets.  You understand that pursuant to this plea agreement you've agreed that you will fully and completely disclose to the United States Attorney's Office the existence of any assets that you have right or title to or interest or own?

THE DEFENDANT:  Yes.

MR. JACOBS:  Skipping ahead to paragraph 14, which deals with Forfeiture.  You understand that pursuant to this plea agreement you've consented to the entry of a money judgment forfeiture in the amount of $122,698?

THE DEFENDANT:  Yes.

MR. JACOBS:  With respect to paragraph 15, Waivers of Appeal and Collateral Attack, you understand that in this plea agreement you are agreeing to waive your right to appeal any nonjurisdictional issues?

THE DEFENDANT:  Yes.

MR. JACOBS:  And there's a small exception to that

waiver, which is you're retaining the right to appeal the substantive reasonableness of a term of imprisonment above 37 months imprisonment, the high end of the guideline range?

THE DEFENDANT: Yes.

MR. JACOBS: And, similarly, the government is retaining the right to appeal the substantive reasonableness of a term of imprisonment below 30 months or the low end of the guideline range, as agreed to by the parties?

THE DEFENDANT: Yes.

MR. JACOBS: And you are also waiving your right to petition under 28 U.S.C. 2255 for a habeas petition or collateral attack?

THE DEFENDANT: Yes.

MR. JACOBS: Except that you are going to retain the right to file such a petition for ineffective assistance of counsel?

THE DEFENDANT: Yes.

MR. JACOBS: Moving on to paragraph 16, FOIA Requests. You understand that pursuant to this plea agreement you've waived your right to obtain information about the investigation and prosecution pursuant to the Freedom of Information Act?

THE DEFENDANT: Yes.

MR. JACOBS: And, finally, moving on to paragraph 17, you understand that this plea agreement and

any other agreements signed by the parties before this plea agreement is a complete and total understanding of the parties?

THE DEFENDANT:  Yes.

MR. JACOBS:  That no one has made any other promises or side deals with you outside of what's contained in this agreement?

THE DEFENDANT:  Yes.

MR. JACOBS:  Your Honor, nothing further on the plea agreement from the government.

THE COURT:  Mr. Gregorius, do you have anything you wish to go over?

MR. GREGORIUS:  Nothing further with regard to the agreement itself, Your Honor.

THE COURT:  All right.  Mr. Jacobs, let me just ask you and Mr. Gregorius about the forfeiture and the restitution.

That's obviously the same amount of money.  So will there be an offset against restitution for the amount of forfeiture?  In other words, forfeiture is applied to restitution?

MR. JACOBS:  Your Honor, my understanding is it need not be, but in this case I would anticipate that it would be.

THE COURT:  Okay.  So it's not -- but it can be

done and you will -- and you're going to make sure that that happens?  That's the agreement?  In other words, he's forfeiting $122,000 and he's also owing that restitution.

MR. JACOBS:  Your Honor.

THE COURT:  So the question is, How that gets paid.

MR. JACOBS:  Your Honor, that's not a term of the plea agreement.  It could be that the government seeks forfeiture and restitution.  Typically, that's not how we handle it, but that's outside the scope of the plea agreement, at least between the parties.

THE COURT:  So there's no agreement as to how that's handled?

MR. GREGORIUS:  I think logistically, Your Honor, all we're agreeing to in the plea agreement is the entry of the money judgment; and then obviously if there were, if there were assets obtained through ill-gotten gains, those would be subject to forfeiture and that there would be an offset to that or to the ultimate money judgment.

MR. JACOBS:  That's correct.  That's the government's understanding, Your Honor.

THE COURT:  Okay.  So the agreement says that the defendant owes restitution in the amount of $122,000.  The agreement also says that he's going to have a money judgment forfeiture of $122,000.

MR. JACOBS:  Correct, Your Honor.

THE COURT:  Okay.  All right.  As long as you two are in agreement, that's fine.  Thank you.

Mr. Ali, are those the terms of the plea agreement as you understand them?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And the government has agreed that if you plead guilty to Count 1 of the indictment, that the government will move to dismiss the remaining counts against you -- so I think that's 8 and 14 -- at sentencing.  Is that your agreement?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  So if I accept the plea agreement, at sentencing -- or I accept the plea agreement, the judgment eventually in this case will include a dismissal of those counts.

As I mentioned before the attorneys went over the plea agreement, I want you to understand the impact of that agreement on me, because I'm the judge who will sentence you in this case.  And so, again, the court is not a party to the plea agreement.  It is the government and your attorney making a recommendation to the court.

They are also making an estimate of the sentencing guidelines that might apply.  So earlier we went over the statute that applies to conspiracy.  The sentencing

guidelines are something different; they are a recommendation to the court.

And I have to decide a couple of things. First I have to decide what those sentencing guidelines recommend, and then I have to decide whether to follow the recommendation. And those are things, two judgments that I must make under the law independently.

And the attorneys do their very best to estimate what those guidelines recommend. Probation is here, and probation will submit a probation report that also estimates those guidelines. And then I make a final determination about what the guidelines are, and then I arrive at a sentence using the guidelines as one factor.

All of that is a long way of saying that you can't count on getting a guideline sentence or a sentence that is exactly what you hope for. You may get a sentence that is longer or harsher than what you hoped for. And I say that in every case because in every case, as I sit here and take a plea, I don't know enough about you or what occurred here in order to determine the sentence. I do that at sentencing after a lot of work has been done.

Does that make sense to you?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And if you get a sentence that is longer or harsher than what you hoped for, that's not a

reason to withdraw your plea.  You can't do it.  Do you understand?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Okay.  Normally the parties have a right to appeal a sentence.  So I talked about appeal of conviction earlier.  This is appeal of sentence.

In your plea agreement you agree that you'd give up your right to appeal your sentence if the court imposes a sentence at or below 37 months imprisonment.  Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And the government can appeal the sentence if it's less than 30 months.

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  So before I can accept your plea -- and this is the point at which you give up your right to remain silent as to the facts that occurred in this case -- before I can accept your plea, I need to determine whether you are actually guilty.

And so I'd like to go over the factual basis. I'll ask Mr. Jacobs to do that.  And, again, Mr. Gregorius can ask questions at the end.  I may have a few questions as well.  The factual basis is set forth in fairly -- it's a fairly detailed factual basis in paragraph 2 of the plea agreement.

Mr. Jacobs, I'll turn it over to you.

MR. JACOBS:  Thank you, Your Honor.

Mr. Ali, the same thing goes; if you want me to repeat or rephrase a question, just let me know.  Okay?

THE DEFENDANT:  Okay.

MR. JACOBS:  I'm going to ask you some questions from paragraph 2 of the factual basis beginning on page 2.

From December of 2020 through January of 2022, did you knowingly and willfully conspire with others to participate in a fraudulent scheme?

THE DEFENDANT:  Yes.

MR. JACOBS:  Was that fraud scheme to obtain and misappropriate millions of dollars in Federal Child Nutrition Program funds that were intended as reimbursements for the cost of serving meals to underprivileged children?

THE DEFENDANT:  Yes.

MR. JACOBS:  Did you use a nonprofit entity that had previously been created by a coconspirator?

THE DEFENDANT:  Yes.

MR. JACOBS:  Was that entity called Youth Inventors Lab?

THE DEFENDANT:  Yes.

MR. JACOBS:  Did you use Youth Inventors Lab as a shell company to carry out the fraud scheme?

THE DEFENDANT:  Yes.

MR. JACOBS:  Did you and your coconspirators enroll Youth Inventors Lab in the Federal Child Nutrition Program as a purported site providing meals to underprivileged children?

THE DEFENDANT:  Yes.

MR. JACOBS:  And was that under the sponsorship of an entity called Feeding Our Future?

THE DEFENDANT:  Yes.

MR. JACOBS:  After you enrolled that entity in the Federal Child Nutrition Program, did you and your coconspirators immediately begin submitting claims for reimbursement for serving meals to hundreds or even thousands of kids a day?

THE DEFENDANT:  Yes.

MR. JACOBS:  And in support of those fraudulent claims, did and your coconspirators prepare and submit fake invoices purporting to document the purchase of food from a vendor?

THE DEFENDANT:  Yes.

MR. JACOBS:  And was that vendor S & S Catering?

THE DEFENDANT:  Yes.

MR. JACOBS:  But in reality did S & S Catering not provide Youth Inventors Lab with any meals?

THE DEFENDANT:  Yes.

MR. JACOBS:  And, again, in reality did Youth

Inventors Lab not serve any meals?

THE DEFENDANT:  Yes.

MR. JACOBS:  And in total did Youth Inventors Lab claim to have served over 1.3 million meals between December of 2020 and June of 2021?

THE DEFENDANT:  Yes.

MR. JACOBS:  Based on those fraudulent claims that we just went over, did you and Youth Inventors Lab receive millions of dollars in Federal Child Nutrition Program funds from the sponsor entity Feeding Our Future?

THE DEFENDANT:  Yes.

MR. JACOBS:  And did you submit fake invoices from your company Bilterms Solutions to Youth Inventors Lab?

THE DEFENDANT:  Yes.

MR. JACOBS:  Were those invoices for purportedly providing technology services?

THE DEFENDANT:  Yes.

MR. JACOBS:  But in reality did you and your company Bilterms Solutions not actually perform the services outlined in those invoices?

THE DEFENDANT:  No.

MR. JACOBS:  And, rather, the purpose of the invoices was to hide the source of the funds?

THE DEFENDANT:  Yes.

MR. JACOBS:  And in total did you receive

approximately $82,000 --

THE DEFENDANT:  Yes.

MR. JACOBS:  -- from Youth Inventors Lab?

THE DEFENDANT:  Yes.

MR. JACOBS:  Did you also receive payments through your company Bilterms Solutions from coconspirators made through another company called Franklyn Transportation?

THE DEFENDANT:  Yes.

MR. JACOBS:  And were those payments made to you for your participation in the fraud scheme?

THE DEFENDANT:  Yes.

MR. JACOBS:  And in total did you receive approximately $47,000 from Franklyn Transportation?

THE DEFENDANT:  Yes.

MR. JACOBS:  Did you and your coconspirators transfer millions of dollars from the Youth Inventors Lab bank account to other individuals and entities involved in the fraud scheme?

THE DEFENDANT:  Yes.

MR. JACOBS:  And did that include to the vendor S & S Catering as payments for purportedly providing meals and food that Youth Inventors Lab never received?

THE DEFENDANT:  Yes.

MR. JACOBS:  And in total did you and your coconspirators receive over $3 million in reimbursements

from Feeding Our Future?

THE DEFENDANT: Yes.

MR. JACOBS: Your Honor, nothing further on the factual basis from the government.

THE COURT: Mr. Gregorius, do you have anything in addition?

MR. GREGORIUS: No questions for me, Your Honor.

THE COURT: Mr. Ali, I just want to make sure I understand. You used Youth Inventors Lab as a site for the Federal Child Nutrition Program?

THE DEFENDANT: Yes.

THE COURT: And Youth Inventors Lab wasn't something that you created for this scheme. It was something that you had already started?

THE DEFENDANT: Yes, it was created by one of the coconspirators already.

THE COURT: Okay. And so you had -- and that coconspirator was doing the same thing you were, which is create -- which is using the Youth Inventors Lab site as a site for the Federal Child Nutrition Program?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Okay. And so once that gets established as a site, then you sort of pretend that S & S Catering is providing the meals?

THE DEFENDANT: Yes, S & S, yes, is going to

provide the meals.

THE COURT:  The meals.  And Youth Inventors Lab is going to distribute the meals.  That's the pretend thing that was going on?

THE DEFENDANT:  Yes.

THE COURT:  Okay.  And so once Youth Inventors Lab gets paid for distributing the meals, the money goes from Youth Inventors Lab to two of your companies, basically straight into your pockets?

THE DEFENDANT:  It -- yes, Your Honor.

THE COURT:  Okay.  And the number of meals that Youth Inventors Lab claimed to serve or have served was over 1.3 million meals in a period of a year and a half, December -- no -- period of six months, December 2020 through June 2021?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And the number of meals actually served was zero?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Okay.  And because this is a conspiracy count, all of the -- you're participating in all of this through Youth Inventors Lab and your coconspirators -- you're working with others at Youth Inventors Lab and at S & S to carry out this fraudulent scheme?

THE DEFENDANT: Yes.

THE COURT: Okay. And I'm not asking you to name them. I'm just wanting you to understand that this is a conspiracy count, right?

And so you have these coconspirators who are working with you to carry out this fraudulent scheme and to distribute the money to yourself and others, right?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Okay. All right. I have the plea agreement signed, as I noted, by the parties, the attorneys and by Mr. Ali.

I'm going to ask you your plea in a moment, sir. Before I do so, do you wish to speak at all to your attorney?

THE DEFENDANT: No, Your Honor.

THE COURT: Has anyone forced you, coerced you or done any violence to you or any other person in order to get you to plead guilty?

THE DEFENDANT: No, Your Honor.

THE COURT: Are you going to plead guilty because you are in fact guilty of the crimes charged?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And then I'm going to ask you how you plead to Count 1 of the indictment, conspiracy to commit wire fraud. Do you plead guilty or not guilty?

THE DEFENDANT:  Guilty, Your Honor.

THE COURT:  I'm going to make a few findings here. Based on your testimony here today, your demeanor in court and your interactions with me and with your attorney, I'm going to find that you are clearly mentally competent and capable of entering an informed plea, you are aware of the nature of the charges against you and the consequences of the plea of guilty.  I find that your plea is voluntary, knowing and informed, supported by independent facts in the record establishing the elements of the offense.  And so I'm going to accept your plea of guilty and find you guilty as charged.

THE DEFENDANT:  Thank you, Your Honor.

THE COURT:  Here's what happens next.  A presentence will be conducted and a report prepared to assist me in sentencing.  Probation does that.  And we have a probation officer here who is --

Officer Heino, will you be writing the report in this case?

PROBATION OFFICER:  I will, Your Honor.

THE COURT:  All right.  So you will meet with Officer Heino.

As part of the investigation, you are required to give information for the report.  You may have your attorney present with you while you are interviewed.

After that report is prepared, then you may read it, object to it, and your attorney can object to it.  The government can object to it.  You may all submit position papers, letters on your behalf.  We'll hold a sentencing hearing at some point in the future, and at that sentencing hearing I will decide your sentence.

Currently you are on release.  I have a release status report that indicates you have been doing well on pretrial release.

And so my question to the government is whether there is -- whether the government has a position as to release or detention.

MR. JACOBS:  Your Honor, we would just ask that those same conditions be carried over.

THE COURT:  And so you understand all of the conditions that were put in place when you were placed on pretrial release, that the order setting conditions of release was filed on September 20th, 2022.  And so I would intend to keep all of those conditions in place.

And I don't believe probation has any additional conditions that they recommend?

PROBATION OFFICER:  That's correct.

THE COURT:  All right.  And, Mr. Gregorius, do you agree with keeping the same conditions in place?

MR. GREGORIUS:  I do, Your Honor.  Thank you.

THE COURT:  All right.  And so that order of September 20th will continue to be in place.  You will be on the same conditions.

I need to note for you that it is a separate crime to fail to appear for your sentencing, once it is set.  So the next time I see you will be at your sentencing hearing.  And, again, I'm not setting the date at this time.  We'll set it some time in the future after the presentence report is fully prepared.

At this time is there anything else that needs to come before the court, Mr. Jacobs?

MR. JACOBS:  Not from the government.  Thank you, Your Honor.

THE COURT:  Mr. Gregorius, sir?

MR. GREGORIUS:  Nothing further, Your Honor.  Thank you.

THE COURT:  All right.  Thank you.

I'll see you, sir, at sentencing.

We're adjourned.

THE CLERK:  All rise.

(Court adjourned at 4:35 p.m., 10-26-2022.)

* * *

I, Renee A. Rogge, certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.
Certified by:  /s/Renee A. Rogge
Renee A. Rogge, RMR-CRR