UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal Case No.: 22CR00224(2)(NEB)

| | |
|---|---|
| United States of America,<br>    Plaintiff,<br><br>v.<br><br>Sahra Mohamed Nur<br>    Defendant. | **DEFENDANT'S POSITION WITH RESPECT TO SENTENCING** |

## I.

## INTRODUCTION

Defendant Sahra Mohamed Nur, by and through his attorneys of record, Marcus L. Almon and A.L. Brown, hereby respectfully present this memorandum to address Ms. Nur's position regarding sentencing factors in determining the appropriate sentencing guidelines range of incarceration and in support of his motion for a downward departure and variance from those guidelines.

The Sentencing Guidelines, as applied here by the probation officer in the Presentence Investigation Report (PSR), overlook sentencing factors that are material to achieving justice and are unjustly punitive. A sentence within the guidelines as suggested by probation would be "greater than necessary" to accomplish the statutory goals of sentencing and therefore would violate the mandate of 18 U.S.C § 3553(a).

Ms. Nur was charged in a twenty-two-count indictment involving one count of Conspiracy to Commit Wire Fraud, ten counts of various individuals charged with Wire Fraud, one count of Conspiracy to Commit Money Laundering, and seven counts

1

for various individuals charged with committing Money Laundering. PSR ¶1. On September 7, 2023, Ms. Nur plead guilty to Count 1, Conspiracy to Commit Wire Fraud in violation of 18 U.S.C. §§1343(a)(1) and 37. In addition she plead guilty to Count 21, Money Laundering in violation of 18 U.S.C. §1957. PSR ¶2.

Ms. Nur's sentence as proposed by the PSR would be for a guideline sentence range of 63 to 78 months based on total offense level of 26 and a criminal history category of I. PSR ¶ 111.

## II

## OBJECTIONS TO PRESENTENCE REPORT

### A. Specific Offense Characteristics:

Ms. Nur objects to the application of a two-level enhancement under USSG § 2B1.1(b)(12) of the Sentencing Guidelines where the offense involved conduct under 18 U.S.C. § 1040. PSR ¶59. 18 U.S.C. § 1040 requires the criminal act to be in relation to "a major disaster declaration under section 401 of the <u>Robert T. Stafford Disaster Relief and Emergency Assistance Act</u> (<u>42 U.S.C. 5170</u>) or an emergency declaration under section 501 of the <u>Robert T. Stafford Disaster Relief and Emergency Assistance Act</u> (<u>42 U.S.C. 5191</u>), or in connection with any procurement of property or services related to any emergency or major disaster declaration as a prime contractor with the United States or as a subcontractor or supplier on a contract in which there is a prime contract with the United States". 18 U.S.C. § 1040(a).

The fraud in this case centers around funds provided to organizations to deliver meals for children during the summer months, when school is not in session, and to

aftercare program, day cares, and emergency shelters during the COVID-19 pandemic. PSR ¶27. This program is known as the Federal Child Nutrition Program (FCNP) and is a long running program of the U.S. Department of Agriculture (USDA). Id. The FCNP was expanded to include "off-site" locations to deal with the "stay-at-home orders" of many states including Minnesota. Id at 27.

The ultimate legal question as to whether this enhancement applies is whether the benefits Ms. Nur received for participation in the FCNP were "authorized" or "paid" "in connection with" the President's March 13, 2020, Stafford Act emergency declaration in response to the COVID-19 pandemic. For example, in *United States v. Griffin*, the Fourth Circuit Court of Appeals acknowledged that the district court, in determining if the U.S.S.G. § 2B.1.(B)(12) enhancement applied, concluded that the Economic Disaster Injury Loan benefits (but not the Paycheck Protection Program benefits) were authorized in connection with a Stafford Act declaration. *United State v. Griffin*, No. 22-4673, 2024 WL 1505512, at *3 (4th Cir. Apr. 8, 2024). Although the pandemic created an emergency declaration, there is no evidence the specific funds fraudulently received in this case were emergency relief funds authorized in connection with a Stafford Act declaration. Even more broadly, there is no evidence that the emergency declaration specifically increased USDA child nutrition funding nor provided specific additional funding for the FNCP in which Ms. Nur participated. Likewise, there is no evidence that the increased flexibilities in the implementation of the USDA's child nutrition programs and the expanded scope of those programs - that open the door to fraud - were part of the actual emergency declaration. Therefore, there is no evidence that the funding received by Ms. Nur was

3

generated from the actual pandemic emergency declaration as required under 18 U.S.C. § 1040.  Finally, Ms. Nur was also not a prime contractor or subcontractor on a contract with the United States in which she procured property or services as required under 18 U.S.C. § 1040.  This enhancement does not apply to Ms. Nur.  The court should not apply this enhancement to Ms. Nur without proof from the Government that the funding Ms. Nur received was authorized or paid in connection with the President's March 13, 2020, Stafford Act declaration.

Without the 2-level enhancement for fraud in connection with major disaster or emergency benefits, the appropriate guideline range is 51 to 63 months.

### III

### ARGUMENT

**A.     Downward Departure Pursuant to 28 U.S. Code § 994(j) and USSG § 5C1.1, cmt. n. 10(B).**

A downward departure from the sentencing guidelines is warranted in this case pursuant to 28 U.S. Code § 994(j) and USSG § 5C1.1, cmt. n. 10(B).  28 U.S. Code § 994(j) states the following:

> The Commission shall insure that the guidelines reflect the general appropriateness of imposing a sentence other than imprisonment in cases in which the defendant is a first offender who has not been convicted of a crime of violence or an otherwise serious offense.

and the USSG reflect that directive by stating the following:

> A departure, including a departure to a sentence other than a sentence of imprisonment, may be appropriate if the defendant received an adjustment under §4C1.1 (Adjustment for Certain Zero-Point Offenders) and the defendant's applicable guideline range overstates the gravity of the offense because the offense of conviction is not

4

a crime of violence or an otherwise serious offense.

USSG § 5C1.1, cmt. n. 10(B). Ms. Nur is an appropriate recipient of this departure to a sentence other than imprisonment. She is a Zero-Point Offender and has received that adjustment. PSR ¶71. She has not been convicted on a crime of violence or an otherwise serious offense. Id. at ¶¶76-81. While the amount of loss in this case is significant, wire fraud and money laundering are not, in themselves, serious offenses. They not related with causing physical or mental harm whether through violence or chemical dependency. They are not associated with the possession or use of weapons or firearms. Moreover, they are also not the type of offenses that encourage violence and other serious crimes to be associated with them. The guideline range of 63 to 78 months as advocated by probation overstate the gravity of offenses which are based on deceit. The deceit in this case was not sophisticated or complicated. Applying this departure to Ms. Nur would accomplish the intent of 28 U.S. Code § 994(j) by not overstating the gravity of offenses that are accomplished through deceit rather than violence. To reflect the intent of 28 U.S. Code § 994(j) and USSG § 5C1.1, cmt. n. 10(B), the appropriate guideline sentence range would include a probationary term.

**B.      Downward Variance Pursuant to 18 U.S.C. § 3553(a).**

The sentencing guidelines at 18 U.S.C. § 3553 (a) set forth that a judge must "impose a sentence sufficient, but not greater than necessary." The factors to be considered by the judge in determining an appropriate sentence are:

(1) the nature and circumstances of the offense and the history and

characteristics of the defendant;

(2) the need for the sentence imposed –

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant…

18 U.S.C. § 3553(a). This Court can apply §3553(a) to sentence Mr. Nur below the guideline range.

**(1) Nature and Circumstances of the Offense**

The first section in §3553(a)(1) allows the Court to look at the nature and circumstances of the offense. Ms. Nur takes responsibility for making fraudulent claims of feeding more children than she was and receiving payments for those false claims. The fraudulent activity was not a very sophisticated process. As a member of S&S Catering, Ms. Nur participated in the fraud of Ms. Qamar Hassan submitting invoices with meal counts for the alleged children being served and invoices for the food being bought. PSR ¶33. The scheme was easily discoverable given multiple FOF participants were making claims of feeding multiple thousands of children a day. Id. at 31. In fact, by October of 2020, the Minnesota Department of Education ("MDE") became concerned about the scale of reimbursement being requested by participants of

the Feeding Our Future ("FOF") programs. Id. at 30. Eventually, MDE began to deny some program applicants and withholding reimbursements. Id. at 31.

Ms. Nur also took responsibility for laundering the money she received from the FOF program. The main basis for this charge against Ms. Nur was the transferring of money to purchase commercial buildings in particular the property at 301-309 East Lake Street in Minneapolis, MN[1]. The building is the location of S&S catering. Unlike others involved in the FOF program who laundered money by sending money abroad, purchasing property in other countries[2], and creating multiple shell companies, Ms. Nur was not as sophisticated in her efforts to hide the proceeds. Ms. Nur gains were easy to trace and recover, because she was involved in literally purchasing the land beneath her.

**(2)  History and Characteristics of the Defendant**

The second part of §3553(a)(1) asks the Court to assess the history and characteristics of the defendant. Ms. Nur comes become the court at a 63-year-old survivor. PSR¶84. War has not reached the shore of the continental United States in 150 years. Unfortunately, it reached Ms. Nur in her homeland of Somalia. Id. It reached her by plummeting her homeland into a vicious civil war. Id. It reached her by killing her father. Id. It reached her by its preparators raping her and her mother. Id. It reached her my making her flee for her life. Id. It reached her by making her a

---

[1] See ECF. No. 160.
[2] See PSR ¶¶ 42-43 (Co-Defendant Qamar Hassan transferred money to Kenya to purchase property. Co-defendants Abdiwahad Mohamud and Abdullahe Jesow both used fraudulent funds to purchase residential property).

nomad, moving from county to county selling clothes to survive. Id. She still cannot return home to visit her children due to her trauma. Id.

In 1999, she was able to immigrate to the United States and has achieved citizenship. Id. at 86. She settled in Minnesota because it provided her a chance to be a part of community like she had before the war. Id. at 87. She had thrived as part of the community that adopted her here. Id at 89. Her neighbor, Kathleen Whitley, described her as "generous and kind". The kind of person who would hire a personal trainer for herself and the young women in her community to prepare to perform the strenuous journey of the Hajj Pilgrimage to Mecca[3]. Her friend Abdi Arale described her as "kind and helpful". The kind of person that would often drive him to dialysis treatments. Id. at 88. A person dedicated to her community is a person worthy of a downward variance. *United States* v. *Kobriger*, 825 F.3d 495, 498 (8th Cir. 2016)("Certainly a defendant's character, including [his] commitment to the community and a positive impact on its members, can properly form the basis for a motion for downward variance.")(internal citations omitted). Ms. Nur took responsibility for her actions because she knows what she did was wrong. She may have not been the mastermind, but she acknowledges that she knew what they were doing was wrong. Id. at 53. She sees her participation in this criminal scheme as the "biggest mistake of her life". Id. Not because she got caught or that she faces punishment, but because she committed this act against the country that "gave her a

---

[3] Letter of Kathleen Whitney, MD.

chance to live in dignity and find a safe community". Id.

### (3) <u>The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, to Promote Respect for the Law and to Provide Just Punishment for the Offense</u>

In determining an appropriate sentence, judges must analyze the "need for the sentence imposed … to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." U.S.C §3553(a)(2)(A). Any sentence the court impose only further highlights the seriousness of the offense. Ms. Nur settled in Minnesota to be a part of the Somali community. For her part in this matter, Ms. Nur has already been shunned by her community. She has lost friends. Her partner has abandoned her. Her isolation from her community has caused her to be diagnosed with anxiety, major depressive disorder with psychotic features, and insomnia. PSR ¶94. The seriousness of the offense is not lost on someone who has been abandoned by her friends, family, and community.

Ms. Nur may be before the court because she committed a criminal offense, but the court need not impose a sentence within the guidelines to promote her respect for the law. Ms. Nur entered a plea early in her prosecution. At 63 years old, Mr. Nur comes before the court with no criminal record. Id. at 79. Her only contact with a court is a dismissed tabs violation. Id. at 80. In 63 years, she has never spent a day in jail. During her pre-trial release she has complied with probation. Id. at 6. She has always been respectful in all ways with law enforcement, the courts, and pre-trial release. Id. Unlike others, she has not attempted to obstruct justice and had no additional contact with law enforcement. She was allowed to leave the country to the

Middle East, and she returned to face punishment. Id. A sentence in the guidelines need not be imposed to promote respect for the law where respect for the law already exist.

The Supreme Court in *Gall v. United States*, affirmed a district court's decision to sentence a defendant to probation rather than imprisonment. The Court acknowledged respect for the law may be promoted by the significant sentences given to other codefendants even when the defendant is given a lenient sentence. *Gall v. United States*, 552 U.S. 38, 54, 128 S. Ct. 586, 599, 169 L.Ed. 2d. 445 (2007). Others who have been involved in the FOF fraud have already received significant sentences that have sent a message about the seriousness of the offense and promote respect for the law. The Supreme Court in *Gall* also agreed with the district court that, "a sentence of imprisonment may work to promote not respect, but derision, of the law if the law is viewed as merely a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in sentencing". Id.

**(4) <u>The Need for the Sentence Imposed to Afford Adequate Deterrence to Criminal Conduct</u>**

Judges must create a sentence, which will provide deterrence to criminal conduct. U.S.C. §3553(a)(2)(B). Before the Court punishes Ms. Nur, others have taken a turn punishing her. She has been shunned by the very community that she moved here to join. She has lost friends. She has lost her companion. She sits at home alone as a pariah[4]. The community has already provided a deterrence to criminal

---
[4] Letter of Kathleen Whitley, MD.

conduct before she is ever sentenced by a court.

Regardless of the punishment rendered, Ms. Nur will have to live with the fact she is a convicted felon. She spent the entirety of her 63 years of life without a conviction. She realizes her own actions have tarnished that legacy and hurt her reputation. When coupled with these convictions, any restriction of her liberty will deter further criminal conduct. As an indication of how she views the importance of this matter, she has complied in every manner with the court since she was indicted. The Mr. Nur understands that this Court must give some punishment in the case, but he asks the Court for a sentence below the sentencing guidelines.

**(5) <u>The Need for the Sentence Imposed to Protect the Public From Further Crimes of the Defendant</u>**

This fifth prong of the guidelines analysis concerns the ability of the sentence to "protect the public from further crimes of the defendant." U.S.C. §3553(a)(2)(C). Ms. Nur is not a threat to the public. Her actions were nonviolent. She was not the originator of the scheme to defraud the government and is not sophisticated enough to participate in the conduct on her own. Id. at 33-35. Given her age and the collateral consequence of being involved in the matter, Ms. Nur is highly unlikely to have the motivation to commit further crimes. Moreover, her lack of any criminal behavior in 63 years speaks volumes about her reluctance to be involved in criminal activity.

Ms. Nur has been and can be again a positive law-abiding member of society. Studies show that age and criminal history are consistently strong predictors of

recidivism. USSG § 5H1.1. In addition, court may consider whether imprisonment is appropriate after factoring in the age of the defendant[5]. USSG § 5H1.1. Ms. Nur comes before the court with a criminal history score of 0 which puts her in Criminal History Category (CHC) I. The Sentencing Guideline Commission found that offender in CHC I, had the lowest rearrest rates at 30.2%[6]. In addition, offenders aged 60 or older upon release reoffended only 15.9 %[7]. This was also the lowest group to reoffend. More important, when age and CHC were combined, only 9.4% of offenders in CHC I who were aged 60 and older at release were rearrested[8]. Again, this is the lowest group to reoffend. The Court need not impose a prison sentence to protect the community from Ms. Nur. As the study shows, Ms. Nur is the least likely person to reoffend.

**(6) The Court can impose a probationary sentence pursuant to 18 U.S.C § 3561(c)(1).**

Ms. Nur is eligible for a variance to a probationary sentence pursuant to 18 U.S.C. § 3561(c)(1). This is in contract with sentencing guidelines which prohibits probationary sentences for offenses in Zone D. USSG § 5B1.1. This dispute between the statute and the guidelines should be settled in favor of the statute. The Supreme Court has stated, "the Guidelines are not mandatory, and thus the 'range of choice dictated by the facts of the case' is significantly broadened. Moreover, the Guidelines are only one of the factors

---

[5] Ms. Nur also has some infirmities surrounding her dietary needs. *See* letter of Claire McNeil, MD
[6] https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2021/20210930_Recidivism.pdf
[7] Id.
[8] Id.

to consider when imposing sentence, and § 3553(a)(3) directs the judge to consider sentences other than imprisonment". *Gall v. United States*, 552 U.S. 38, 59, 128 S. Ct. 586, 602, 169 L. Ed. 2d 445 (2007). The Supreme Court has further emphasized this point, noting "[ o]ur cases do not allow a sentencing court to presume that a sentence within the applicable Guidelines range is reasonable," and that "[t]he Guidelines are not only *not mandatory* on sentencing courts; they are also not to be *presumed* reasonable." *Nelson v. United States,* 555 U.S. 350 (2009) *(per curiam)* (emphasis in the original). The court has the authority to fashion a probationary sentence whose length and conditions better serve the purpose of a sentence this is sufficient, but not greater than necessary. Pursuant to 18 U.S.C. § 3563(a), the court considers the applicable 3553(a) factors in determining the length of the term and conditions of probation. Pursuant to 18 U.S.C. § 3561(c)(1), the court may sentence Ms. Nur up to 60 months on probation. The Supreme Court emphasized in *Gall* that "[o]ffenders on probation are subject to several standard conditions that substantially restrict their liberty". 128 S. Ct. at 595. Conditions of probation include mandatory restitution payments, abstinence, and drug testing. U.S.S.G. § 5B1.3(a). The court may also impose conditions such as community service, home detention, and residence at halfway house. U.S.S.G. § 5B1.3(e). She will not be able to change or make decisions about significant circumstances in her life, such as where to live or work, and restrictions on associations with specific individuals which are prized liberty interests, without first seeking authorization from her probation officer or, perhaps, even the Court. U.S.S.G. § 5B1.3(c). Of course, the Defendant always faces the harsh consequences that await if she violates the conditions of her probationary term.

# IV

# CONCLUSION

Based upon the foregoing, Mr. Nur respectfully seeks a sentence below the sentencing guidelines. She respectfully requests a probationary sentence that reflects the §3553(a) factors.

If the court determines that a period of incarceration is warranted, the defendant further requests that she be designated to a federal facility in Minnesota or as close to Minnesota as possible.

Respectfully Submitted:

Dated: 03/27/25  By: *Marcus L. Almon*
Marcus L. Almon
Attorney License # 0319387
Capitol City Law Group, LLC
287 East Sixth St., Ste 20
St. Paul, MN 55101
Tel. 651-209-9986
MarcusAlmon@CCLAWG.com

**ATTORNEY FOR THE DEFENDANT**