`

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | **MOTION TO EXCLUDE 404(b) EVIDENCE** |
| Plaintiff, | |
| | Case No. 22-cr-00224 (NEB-DTS) |
| v. | |
| ABDIWAHAB MOHAMUD (3), | |
| Defendant. | |

## MOTION

Defendant Abdiwahab Mohamud moves the Court for an Order excluding evidence relating to the matters listed on the Government's Rule 404(b) Notice, dated September 29, 2025 (attached as Exhibit A).

## ARGUMENT

The Government seeks to admit evidence of alleged acts relating to acquisitions of COVID small-business loans and allegations of federal food-program fraud at a business owned by the Defendant, Minnesota Senior Center, that is unrelated to the entities within the scope of the Government's preexisting conspiracy allegations as contained in the Indictment.  In short, the Government is seeking to do exactly what Fed. R. Evid. 404(b) prohibits: argue that the Defendant's guilt can be inferred by the Defendant's other alleged fraudulent acts.

### I.    The Acts Alleged Must Meet the Rule 404(b) Standards.

As a threshold matter, the Court should note that the acts alleged by the Government are not "intrinsic to the charged conspiracy and scheme," as the Government claims, and therefore are subject to rule 404(b) analysis.  Acts which are "intrinsic to the charged

1

conspiracy or scheme" can be presented as direct evidence of how the scheme operated and are not subject to exclusion under rule 404(b). *See, e.g.*, *United States v. Bass*, 121 F.3d 1218, 1222 (8th Cir. 1997). But "courts should be very chary of admitting 'bad act' evidence" under this avoidance-of-404(b) theory. *United States v. Ameri*, 297 F. Supp. 2d 1168, 1168-69 (E.D. Ark. 2004); *see also id.* ("[T]his sounds like the hoary *res gestae* doctrine to me.").

Specifically, such evidence is admissible in a conspiracy case without reference to rule 404(b) because it bears upon a defendant's "participation in the very conspiracy described in the indictment." *Id.* Thus, in order to exempt its proffer of evidence from Rule 404(b), the Government must first establish that the acts alleged lie without the scope of the conspiracy that the Government alleges existed. And the scope of the conspiracy alleged against a defendant and the specific acts the Defendant is alleged to have committed must be set by reference to the Indictment in order to provide the Defendant fair notice of what scope of conspiracy he must defend against at trial. *See, e.g.*, *United States v. Rivera*, 89 F. Supp. 3d 376, 400 (E.D.N.Y. 2015); *see also United States v. Trump*, 736 F. Supp. 3d 1206, 1212 (S.D. Fl. 2024) (noting that acts alleged in superceding indictment were sufficiently detailed because they specified the scope of the conspiracy and the defendant's specific position within it).

After establishing that the conduct alleged in the 404(b) notice occurred within the scope the conspiracy, the Government must also show that the conduct was "inextricably intertwined" with the conduct alleged in the indictment to avoid 404(b) analysis. *United States v. Hall*, 604 F.2d 539, 543 (8th Cir. 2010). To qualify as "inextricably intertwined," the alleged conduct must be "an integral part of the *immediate context* of the crime

charged." *Id.* (emphasis added); *see also Ameri*, 297 F. Supp. 2d at 1171 ("Every circuit now applies some formulation of the inextricably intertwined test.")

The Government's allegations do not support its view that the acts alleged in the Government's Rule 404(b) Notice lie without the scope of the conspiracy that the Government alleges in the Indictment.  The conduct alleged against the Defendant in the Indictment was quite limited in scope.  As alleged in the indictment, "[m]eals funded by the Federal Child Nutrition Program are served by 'sites.'  Each site participating in the Federal Child Nutrition Program must be sponsored by an organization that is authorized to participate in the Federal Child Nutrition Program.  Sponsors are required to submit an application to MDE for each site.  Sponsors are responsible for monitoring each of their sites and preparing reimbursement claims for their site."  (Indictment ¶ 7)  Thus, the scope of the conspiracy that the Government alleges in the Indictment is set by the Government's identification of which Federal Child Nutrition Program "sites" that the Defendant was involved in.

The conspiracy charge against the Defendant involved participation in alleged fraud at distribution sites operated by Academy for Youth Excellence, a distribution site collocated with S&S Catering and involving the same limited group of individuals. (Indictment ¶¶ 19, 25.l, t)  The indictment alleges no activity by the Defendant outside of this location and no contact with—let alone collaboration with—any person or entity outside the scope of S&S Catering.  (*See* Indictment ¶¶ 38, 40, 45, 53)    The Indictment makes no mention of alleged fraud relating to small-business loan programs in addition to the Federal Child Nutrition Program.  The Indictment also does not allege the existence, let alone the  or Minnesota Senior Center.

Similarly, the wire-fraud charge against the Defendant identifies no alleged actions by the defendant outside the scope of S&S Catering and its alleged affiliated entities. (*See* Indictment p.22, Count 12)  And the money-laundering charges also allege no actions by the Defendant relating to the receipt or the disposition of funds received from small-business loans or Minnesota Senior Center. (*See* Indictment ¶ 66)

The Indictment also alleges no contacts between the central organization Feeding Our Future and Minnesota Senior Center.  The Indictment also does not allege (as does none of the Indictments in related cases) any interrelationship between the federal child food program fraud schemes surrounding Feeding Our Future and COVID small business loans.

Even if the acts alleged in the 404(b) notice were within the charged conspiracy, they are not inextricably intertwined with the acts charged in the Indictment.  The Indictment alleges the Defendant's involvement with a fraudulent scheme to obtain funds from the Federal Child Nutrition Program, not COVID-era small-business loans.  And the Indictment alleges the Defendant's involvement consistent of sending himself emails of purported "fake names" for food-distribution sites affiliated with entities beneath S&S catering and signing a limited number of fraudulent meal-count sheets, not with operating another site through Minnesota Senior Center.  All of the conduct alleged in the 404(b) notice is completely separate from the purported conspiracy alleged in the Indictment; none of it is even related, let alone inextricably intertwined, with the S&S conspiracy.

Because the acts alleged in the Indictment lie outside the scope of the conspiracy set forth in the Indictment and is not inextricably intertwined with it, the Court must analyze those acts under the standards for Rule 404(b) and must not admit the evidence as an intrinsic part of the conspiracy alleged.

II.   The Conduct Alleged in the 404(b) Notice Should Not be Admitted Under Rule 404(b).

Evidence of other bad acts by a defendant may be admitted to "prov[e] motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). In order to introduce such evidence, the Government must "provide reasonable notice of any such evidence that the prosecutor intends to offer at trial, so that the defendant has a fair opportunity to meet it [and] articulate in the notice the permitted purpose for which the prosecutor intends to offer the evidence and the reasoning that supports the purpose." Fed. R. Evid. 404(b)(3). The Government bears the burden to show that the evidence is admissible. *See United States v. Robbins*, 613 F.2d 688, 694 (8th Cir. 1979) ("[I]t is generally improper to admit evidence of a defendant's criminal acts not charged in the indictment." (quotation omitted)).

The Government's notice falls far short of the required standard in several distinct ways. First, the Government has provided no notice of any specific evidence but rather has provided a notice of four *categories* or purported evidence that it will seek to admit relating to conduct that differs as discussed above from the scope of the conspiracy alleged in the Indictment. The notice includes no details about what the evidence is. Is it documents? If so, what kind, obtained from what sources, and subject to what analysis and inferences? Is it witness testimony? If so, from whom, obtained when and under what conditions?

These omissions are critically important because the Government is required to show that the other-bad-acts alleged actually occurred by "clear and convincing evidence," which the Government cannot do (and the Defendant cannot be prepared to meet) without specification of *precisely* what evidence that the Government intends to offer. *See, e.g.,*

5

*id.* at 693 (requiring that the Government's notice specify "the proffered evidence relevant to" the purported admissible purpose).

Second, the Government's notice provides no specification of "*a* material issue on which other crimes evidence may be raised." *See id.* (emphasis added). Rule 404(b) requires specification of "*the* [singular] permitted purpose" for which the Government intends to use the evidence. The notice must also provide "the reasoning that supports the purpose." The Government's notice here does neither and instead just provides a menu of *all* potential enumerated issues listed in Rule 404(b), bereft of any reasoning supporting the admission of the evidence on any of those grounds. This "hide-the-ball" method prejudices both the Defendant's ability to effectively argue the issue at the pretrial hearing and the Defendant's ability to prepare to meet the evidence at trial, if the evidence is admitted. The Government's proffer should therefore be denied as insufficiently noticed, especially in light of the fact that the Government failed to provide any notice of its intent to use other-bad-acts evidence for over two *years* until very shortly before trial.

Even if the Government's notice met the requirements under Rule 404(b), the Court should exclude the evidence if it is substantially more prejudicial than probative. *See id.*, at 694-95. Although the Government's failure to specify the evidence it intends to use makes it difficult to be sure, it appears extremely likely that the Government's intended use would be link the Defendant far beyond the already-infamous and sweeping scope of so-called "Feeding Our Future" cases to entities never before even *mentioned* as linked *in any way* to Feeding Our Future (Minnesota Senior Center) and to a taxpayer-funded program for COVID relief under the Small Business Administration, an entirely different government agency with entirely different purposes, rules, regulations, and governing statutes. In short, the evidence sought by the Government would be used precisely for what

6

Rule 404(b) prohibits: to cast the Defendant *generally* as prone to fraud in taxpayer funded

programs.  The Court should therefore exclude the evidence, whatever it turns out to be.


Respectfully submitted,


Dated:  _October 2, 2025_                    */s/ Jason Steck*
                                             Jason Steck
                                             Attorney No. 0393077
                                             Attorney for Defendant Mohamud
                                             6160 Summit Drive North, Suite 224
                                             Brooklyn Center, MN 55430
                                             Phone: (763) 402-1829